**Charlie H. CHRISTIAN, Plaintiff,**

**v.**

**Margaret HECKLER,\* Secretary of Health and Human Services, Defendant.**

**No. 82–1112.**

United States District Court, W.D. Arkansas, El Dorado Division.

Nov. 1, 1983.

---

\* On its own motion, the Court substitutes Secretary Heckler as party defendant in place of her predecessor, the Honorable Richard Schweiker, Jr.

Denver L. Thornton, El Dorado, Ark., for plaintiff.

W. Asa Hutchinson, U.S. Atty. by Larry R. McCord, Asst. U.S. Atty., Fort Smith, Ark., for defendant.

## MEMORANDUM OPINION

OREN HARRIS, Senior District Judge.

Plaintiff Charlie Christian appeals from a May 27, 1982 final decision of defendant Secretary of Health and Human Services terminating his social security disability insurance benefits. Jurisdiction of this Court is established pursuant to 42 U.S.C. § 405(g). On review, the Court must accept all findings of the Secretary that were supported by substantial evidence. Substantial evidence is that amount a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

## FACTS

Plaintiff is now thirty-two years old and has a twelfth grade education. He has been employed in the past as an oil field worker, an equipment operator, a logger, and a truck driver. He has also served in the Air Force. In July, 1978, plaintiff was gravely injured when the truck he was driving collided with a train. He was hospitalized for four to five months following the accident. Although many of his injuries slowly resolved during the long hospital stay, difficulties with his right shoulder and left knee continued.

Plaintiff's shoulder impairment is permanent and untreatable. The shoulder hurts constantly, and plaintiff cannot raise his right arm as high as shoulder level. He cannot use this arm for lifting heavy objects. His right hand, however, functions normally.

The history of plaintiff's knee impairment is more complicated. Dr. A.E. Dean, an orthopedist, has treated the knee. Plaintiff underwent numerous knee surgeries, and by late spring, 1981, had finally regained the ability to walk without a cane. In June, 1981, Dr. Dean reported that

> At the present time his knee fusion is not complete .... He is able to be weight bearing on it.
>
> ....
>
> I feel at this time that this patient is unable to do any hard or manual labor....

But on December 12, 1981, plaintiff refractured his knee while riding a three-wheeler. Numerous operations were again required. At the time of the February, 1982 administrative hearing, plaintiff had noticeable difficulty walking. He was unable to bear weight on his left leg. In June, 1982, Dr. Dean reported

> This patient has been under my care since 1979 for his left knee. The knee has been fused and then a fracture through the fusion .... He has been disabled during this period of time.

He is in need of another fusion of the knee in the near future after which time he will have to wear a long leg brace on

the left leg. He continues to be disabled for at least a year following the upcoming surgery.

Plaintiff applied for disability benefits in November, 1978. The Secretary eventually allowed the claim. In June, 1981, however, plaintiff was notified that because of improvement in his medical condition, he was no longer disabled within the meaning of the Social Security Act. Benefits were terminated, presumably as of September, 1981. Although plaintiff appealed the termination decision, the Secretary concluded in her final decision dated May 27, 1982 that plaintiff's disability had ceased on June 8, 1981. Plaintiff then filed the present civil action for review of the Secretary's final decision.

At the time plaintiff was receiving disability benefits, he was also seeking vocational rehabilitation services. He applied to the Arkansas Rehabilitation Service in late January, 1981, requesting assistance so that he might attend college. After a medical investigation, the Service formally accepted Mr. Christian into the rehabilitation program on July 27, 1981. In late August, 1981, plaintiff began attending college fulltime. Through a program jointly administered by the State of Arkansas and the Social Security Administration, he received tuition assistance for his first semester. The tuition assistance was then terminated because of new income-related eligibility requirements. In a letter to the Secretary dated January, 1982, Mr. Christian's vocational counselor reported

> We do still maintain a counselling case on him, and I anticipate maintaining this case until he completes his college program. He continues to be eligible for rehabilitation services, although not eligible for [tuition assistance].

> I feel personally that Mr. Christian through his grades during the first semester ... has proven that he does indeed have the capacity for college training, that he is a definite candidate for successful rehabilitation.

## DISCUSSION

Plaintiff contends that the Secretary's findings regarding the severity and duration of his impairments were without substantial evidentiary support. Plaintiff also contends that because he was "participating" in a vocational rehabilitation program he was entitled under section 225(b) of the Social Security Act to continue receiving disability benefits in spite of any medical improvement he may have experienced.

### 1. *Substantial Evidence*

■ After thoroughly reviewing the record, the Court cannot say that the Secretary's finding that plaintiff's disability ended on June 8, 1981, was unreasonable or without evidentiary support. Plaintiff admitted that by June, 1981, he had regained the ability to walk without a cane. Plaintiff successfully completed a semester of college in the fall of 1981, in spite of the pain he undoubtedly experienced. Dr. Dean's letter of June, 1981 shows clearly that plaintiff's condition had markedly improved; in fact, the suggestion in the letter that plaintiff was physically precluded only from performing "hard or manual labor" represents the most optimistic assessment of plaintiff's condition ever offered by Dr. Dean, before or since. Although this Court might have analyzed the evidence differently, the Secretary's cessation finding was reasonably supported by the record. The Court has considered plaintiff's arguments to the contrary, but has not found any material error of fact or law.

■ This does not end our inquiry into the substantiality of the evidence, however. The record reflects a significant worsening of plaintiff's condition in December, 1981. Plaintiff refractured his leg on December 12, 1981, and apparently lost much of the progress he had made. In her final decision, the Secretary denied that the new fracture was disabling. The decision disposed of the issue by stating that

> ... [T]he claimant was continuing to attend his college classes with reasonable regularity, and this ability, alone, indicates the ability to engage in at least

sedentary activity. Also, it is not felt that the disability caused by the most recent fracture of his knee would last a period of twelve months.

This reasoning was erroneous in law, and without evidentiary support. The Secretary's regulations provide that a leg impairment is disabling when the following conditions are present:

> *Fracture of the femur, tibia, tarsal bone, or pelvis* with solid union not evident on x-ray and not clinically solid, when such determination is feasible, and return to full weight-bearing status ... is not expected to occur within 12 months of onset.

20 C.F.R. Part 404, Subpart P, Appendix 1, ¶ 1.11 (1983). Dr. Dean's June, 1982 letter proves that plaintiff's knee impairment met every requirement of the above regulation. Dr. Dean predicted that plaintiff's new knee impairment would be disabling for longer than a year. Furthermore, there is absolutely no evidence, medical or otherwise, which refutes Dr. Dean's findings and projections. In these circumstances, a finding of disability was required. *Jackson v. Schweiker*, 696 F.2d 630 (8th Cir. 1983).

Because plaintiff unquestionably was under a disability from the date he refractured his leg (December 12, 1981) through at least the date of the Secretary's final decision (May 27, 1982), the Court must remand this portion of the case so that the Secretary may determine whether during that time plaintiff also met all other requirements for entitlement to disability benefits. Although the Court assumes (based on Dr. Dean's letter) that plaintiff's disability continued after May 27, 1982, the Secretary is of course free to investigate whether this was in fact the case. *Hancock v. Secretary of HEW*, 603 F.2d 739, 741 (8th Cir.1979).

### 2. *Participation in a Vocational Rehabilitation Program*

In section 301 of the Social Security Disability Amendments of 1980, P.L. 96–265, Title III, ¶ 301, 94 Stat. 449, 450 (1980), Congress added section 225(b) to the Social Security Act. Section 225(b) provides

> Notwithstanding any other provision of this subchapter, payment to an individual of benefits based on disability ... shall not be terminated ... because the physical or mental impairment, on which the individual's entitlement to such benefits is based ... may have ceased, if—
>
> (1) such individual is participating in an approved vocational rehabilitation program ...
>
> and
>
> (2) the Commissioner of Social Security determines that the completion of such a program ... will increase the likelihood that such individual may ... be permanently removed from the disability benefit rolls.

42 U.S.C. § 425(b). In the present case, the Secretary did not obtain the Social Security Commissioner's estimate of the likelihood that college training would permanently remove plaintiff from the disability rolls. Instead, the Secretary indicated that

> [No] specific ruling on this issue needs to be made in the instant case because the claimant's disability was actually determined to have ceased prior to the claimant beginning his vocational rehabilitation.

Plaintiff contends that in terminating his benefits, the Secretary contravened section 225(b).

The Court notes first that section 225(b) is patently ambiguous. Under the social security act, disability benefits normally do not terminate until the third month after the month in which the recipient's impairments become non-disabling. 42 U.S.C. § 423(a)(1); 20 C.F.R. § 404.316 (1983). It is entirely unclear from a reading of section 225(b) whether the section applies to all individuals who begin vocational rehabilitation before their disability benefits terminate, or only to those individuals who begin vocational rehabilitation before their impairments become non-disabling.

■ Although the Court has found no case law on this issue, our review of the

legislative history of section 225(b) convinces us that the section applies only to those persons who are participating in vocational rehabilitation programs *at the time their impairments become non-disabling.* The Senate report recommending passage of the Social Security Disability Amendments of 1980 contains the following discussion of the provision that was later enacted as section 225(b):

> Under present law, persons who are participating in a vocational rehabilitation program are eligible for disability benefits only so long as they continue to meet the definition of disability. Even in cases where continuation in a VR program might substantially improve an individual's chances of permanent productive employment, his benefits are ended when he is determined to have medically recovered, and as a result he may be forced to discontinue his participation in a rehabilitation program .... The committee recognizes that a *person's physical or mental impairment may sometimes improve to the extent that he may no longer meet the strict criteria required to be eligible for case benefits,* yet not to the extent that would constitute full recovery. *In such circumstances, completion* of a vocational rehabilitation program may make a significant difference in the ultimate degree of ... self-sufficiency achieved by the disabled person.

S.Rep. No. 408, 96th Cong. 1st Sess. 49 (1979) (emphasis added), U.S.Code Cong. & Admin.News 1980, pp. 1277, 1327. Clearly, Congress was addressing those situations in which individuals begin vocational rehabilitation, and then experience medical improvement.

■ Plaintiff's impairments became non-disabling on June 8, 1981. Section 225(b) applies to his case, therefore, only if he was "participating" in a vocational rehabilitation program on that date. We conclude that he was not. In our view, "participation" means "active involvement." Even though plaintiff applied for rehabilitation services in January, 1981, he was not accepted or formally enrolled in the rehabili-

tation program until July 27, 1981; hence he could not be said to have participated in the program before July 27, 1981. We regret the harshness of this ruling, but believe that a contrary ruling would contravene the plain meaning of the statutory language.

The Secretary's decision is affirmed, except insofar as it concerns plaintiff's entitlement to benefits for impairments existing after December 11, 1981. Since plaintiff was disabled on and after December 12, 1981, this case is remanded to the Secretary for payment of any benefits that may be due him, and for such further proceedings as she may deem necessary. Plaintiff's motion to remand is in all other respects denied.